Carlos F. Llinás Negret (Florida Bar No.73545)
**NELSON & FRAENKEL LLP**
601 South Figueroa St., Suite 2050
Los Angeles, CA 90017
Tel.: 213-943-6089
Fax: 213-622-6019
Email: cllinas@nflawfirm.com

*Attorneys for Plaintiff* Linda Grant

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| LINDA GRANT, | CASE NO.: 1:23-cv-20928-KMM |
| Plaintiff, | |
| vs. | **PLAINTIFF'S AMENDED COMPLAINT** |
| NCL (BAHAMAS) LTD., d/b/a NORWEGIAN CRUISE LINE, , DOES 1 – 5, | **(DEMAND FOR JURY TRIAL)** |
| Defendants. | |

LINDA GRANT ("Plaintiff"), by and through her attorneys NELSON & FRAENKEL, LLP, files this Amended Complaint against Defendants NCL (BAHAMAS) LTD., DOES 1 – 5, doing business as NORWEGIAN CRUISE LINES, owners and operators of the vessel NORWEGIAN SPIRIT.

Plaintiff respectfully alleges as follows:

///

## INTRODUCTION

### A. The Parties

1. At all times material, Plaintiff, LINDA GRANT, is and was an adult and a resident of the United Kingdom.

2. Defendant NCL (BAHAMAS) LTD., d/b/a NORWEGIAN CRUISE LINE, was and is a for-profit corporation with its world-wide headquarters, principal address, and principal place of business located in Miami, Florida.

3. Defendant NCL (BAHAMAS) LTD. will be henceforth referred throughout this Complaint as "NCL" or "Defendant."

4. At all times material, NCL was the owner and operator of the vessel NORWEGIAN SPIRIT.

5. The full extent of the facts linking the fictitiously designated defendants, Does 1-5, with the causes of action alleged herein are unknown to the Plaintiff, and the true names and capacities, whether individual, plural, corporate, partnership, associate, or otherwise of Does 1-5, inclusive, are unknown to Plaintiff. Plaintiff therefore sues said defendants by such fictitious names. The Plaintiff is informed and believes that each of the defendants designated herein as a "Doe" is negligently, wantonly, recklessly, tortuously and unlawfully responsible in some manner for the events and happenings herein referred to, and/or is strictly liable in tort for injuries and damages with respect to Plaintiff as herein alleged. Plaintiff will hereafter ask leave of Court to amend this Complaint to show said defendants' true names and capacities and to state the manner in which each fictitious defendant is so responsible when the same have been ascertained.

### B. Jurisdiction

6. This Court has diversity jurisdiction over Plaintiff's claims under 28 U.S.C. §1332 because the amount in controversy exceeds seventy-five thousand dollars ($75,000), and Plaintiff is a citizen of a different state than the Defendants.

7. In the alternative, this Court has jurisdiction over Plaintiff's claims under the maritime and admiralty jurisdiction of the Court, pursuant to Article III, §2 of the United States Constitution, delegating jurisdiction over admiralty cases to the federal courts, and 28 U.S.C. §1333.

8. Federal admiralty jurisdiction extends to all navigable waters, salt or fresh, with or without tides, natural or artificial, which are in fact navigable. The term 'navigable waters' means a body of water which, in its present configuration, constitutes a highway of commerce, between the states or with foreign countries. *See Complaint of Paradise Holdings, Inc.,* 795 F.2d 756 (9th Cir. 1986) ("To invoke federal admiralty jurisdiction in tort cases, the tort must occur on navigable waters and bear a significant relationship to traditional maritime activity.").

9. At all times material, the Plaintiff's injuries occurred while she was on board a vessel on navigable waters, travelling between Hawaiian ports.

### C. Venue & Personal Jurisdiction.

10. Venue is proper in the Southern District of Florida pursuant to 18 U.S.C. §1965 and 28 U.S.C. §1391, and because (1) NCL is found and transacts business in this district and (2) NCL maintains a physical presence and its principal place of business in Miami within this district.

11. NCL, at all times material hereto, personally or through an agent:
   a. Maintained its principal place of business in this state and county;
   b. Operated, conducted, engaged in or carried on a business venture in this state and or county; and/or;
   c. Was engaged in substantial activity within this state; and/or
   d. Operated vessels in the waters of this state; and/or
   e. Purposefully availed itself of the benefits of conducting activities in Florida by directing their activities toward this state, thereby obtaining the benefits and protections of this state's laws.

12. NCL was engaged in the business of providing to the public, and Plaintiff in particular, for compensation, vacation cruises aboard its vessels.

13. NCL's headquarters are located at 7665 Corporate Center Drive, in Miami, Florida.

14. NCL has had its principal place of business in Miami, Florida, since its founding in 1966, launching the modern cruise industry by offering weekly departures from Miami to the Caribbean.[1]

15. NCL's Corporate parent, holding company Norwegian Cruise Line Holdings, operates two other cruise lines: Oceania Cruises and Regent Seven Seas Cruises. Oceania Cruises and Regent Seven Seas Cruises, are also headquartered in Miami, Florida.

16. Norwegian Cruise Line Holdings, Ltd. is traded in the New York Stock Exchange.

17. As of 2018, NCL and its sister cruise lines, Oceania Cruises and Regent Seven Seas Cruises, are the third-largest cruise operators in the world, collectively controlling 9.5% of the cruise market by passengers, and 12.6% of the industry revenue.

18. NCL's fleet includes the Norwegian Sky, Norwegian Sun, Norwegian Star, Norwegian Dawn, Norwegian Spirit, Pride of America, Norwegian Jewel, Norwegian Jade, Norwegian Pearl, Norwegian Gem, Norwegian Epic, Norwegian Breakaway, Norwegian Getaway, Norwegian Escape, Norwegian Joy, Norwegian Bliss, Norwegian Encore, and Norwegian Prima.

19. All of NCL's vessels use United States cities as home ports,[2] including itineraries beginning and/or ending in the United States.

---

[1] www.nclhltd.com/investors/sec-filings/annual-reports##document-1626-0001558370-23-002361-1

[2] A home port is the port from which a vessel originates and at which it is based.

20. NCL's major source of revenue is from United States passengers. As NCL represents to investors: "*Although we sell cruises on an international basis, our passenger ticket revenue is primarily attributed to U.S.-sourced guests who make reservations through the U.S. Revenue attributable to U.S.-sourced guests was 85%, 87% and 83% for the years ended December 31, 2022, 2021 and 2020, respectively. No other individual country's revenues exceeded 10% in any of our last three years.*"[3]

21. NCL's passenger ticket contract designates the United States District Court for the Southern District of Florida, in Miami, Florida as the proper venue of litigation, to the millions of U.S.-based cruise passengers it sells and markets cruises to. These contracts also require the application of the General Maritime Law of the United States:

> **Venue and governing law**: Except as otherwise specified herein, any and all disputes whatsoever arising out of or relating to this contract or the guest's cruise, as well as the interpretation, applicability, and enforcement of this contract shall be governed exclusively by the *General Maritime Law Of The United States*, which shall include the death on the high seas act (46 USCS §30302) without regard to choice of law rules, which replaces, supersedes and preempts any provision of law of any state or nation to the contrary. It is hereby agreed that any and all claims, disputes or controversies whatsoever arising from, related to, or in connection with this contract or the guest's voyage, including any activities on or off the vessel or transportation furnished therewith, with the sole exception of claims subject to binding arbitration under section 11(b) above, shall be commenced, filed and litigated, if at all, before the united states district court for the southern district of Florida in Miami, Florida, U.S.A., or as to those lawsuits for which the United States District court for the Southern District of Florida lacks subject matter jurisdiction, before a court of competent jurisdiction in Miami-Dade County, Florida, U.S.A., to the exclusion of the courts of any other country, state, city or county where suit might otherwise be brought.

---

[3] www.nclhltd.com/investors/sec-filings/annual-reports##document-1626-0001558370-23-002361-1

**GENERAL ALLEGATIONS**

22. At all times material hereto, NCL owned, operated, managed, maintained and/or controlled the vessel, NORWEGIAN SPIRIT.

23. NCL is a common carrier and Plaintiff's claims of negligence herein fall within the parameters of 46 U.S.C. §30509 prohibitions against disclaimers and/or waivers. The statute's language is broad and unqualified, and it prohibits common carriers from limiting their liability for "personal injury or death caused by negligence or fault of the owner [of the passenger vessel] or the owner's employees or agents." See id. 30509(a)(1)(A).

24. From June 2, 2022, through June 12, 2022, Plaintiff was a paying passenger on an NCL cruise ship, NORWEGIAN SPIRIT, during a Hawaiian cruise. Accordingly, the vessel travelled between U.S. ports and foreign ports, and between U.S. ports.

25. In order to join the vessel, the Plaintiff purchased airfare through NCL, travelling by airplane from London to Los Angeles, and from Los Angeles to French Polynesia.

26. Plaintiff's cruise included the following itinerary aboard the NORWEGIAN SPIRIT, with scheduled stops at the following ports of call: Raiatea, French Polynesia; Hilo, Hawaii, United States; Maui, Hawaii, United States; Kauai, Hawaii, United States; and Honolulu, Hawaii, United States.

27. Deck 13 of the NORWEGIAN SPRIT included then, and continues to include now, a jogging track partially exposed to the elements.

28. On or about June 8, 2022, Plaintiff went for a walk on the track. When she first arrived, it was bright and sunny outside, and the vessel was traveling over calmed waters.

29. During the course of her walk, Plaintiff slipped on the deck of the jogging track.

30. As a direct and proximate result of the incident, Plaintiff sustained severe and permanent injuries, including a rupture and derangement of the right lateral meniscus.

31. Upon information and belief, the subject jogging track was unreasonably dangerous for foreseeable passenger traffic, including design defects which allowed water to accumulate on the deck surface from sea mist and rain.

32. Upon further information and belief, the day prior to the incident, the vessel transited through an area with rain. Accumulated water remained on the jogging track through the following day, which NCL failed to inspect and correct prior to opening it for passenger transit.

## COUNT ONE
## FOR NEGLIGENCE
### (Against All Defendants)

33. Plaintiff hereby incorporates by reference, as though fully set forth herein, paragraphs 1-32, and alleges as follows.

34. At all times material, Defendants owed a duty to their passengers, including Plaintiff, to exercise reasonable care for their health, welfare, and safety.

35. At all times material, Defendants, by and through their vessel, crew, agents, servants, officers, staff and/or employees, who were acting in the course and scope of their employment and/or agency, undertook to create a dangerous and hazardous condition.

36. At all times material, Defendants, by and through their vessel, crew, agents, servants, officers, staff and/or employees, who were acting in the course and scope of their employment and/or agency, were negligent, careless and breached their duty of care to the Plaintiff, by committing the following acts and/or omissions, including, but not limited to:

   a. Leaving a defect on the floor thereby obstructing and rendering hazardous a foreseeable path of travel; and/or

b. Failing to maintain the floor in a reasonably safe condition; and/or

c. Failing to adequately warn Plaintiff of the dangerous conditions on the subject area; and/or

d. Failing to keep and maintain the subject area in a reasonably safe condition; and/or

e. Failing to inspect the subject area; and/or

f. Creating a dangerous condition and/or failing to remedy a dangerous condition which was known by the Defendants and which in the exercise of reasonable care should have been known by the Defendants; and/or

g. Failing to adopt and implement proper and adequate policies, protocols and procedures for inspection of passenger transit areas, including the subject area; and/or

h. Failing to take feasible and reasonable steps to eliminate a dangerous condition which was known by the Defendants and which in the exercise of reasonable care should have been known by the Defendants; and/or

i. Failing to mark off the area; and/or

j. Any and all other acts or omissions constituting a breach of Defendants' duty to use reasonable care discovered during litigation.

37. At all material times, Defendants had exclusive custody and control of the above-named vessel.

38. At all material times, Defendants created and/or knew or should have known of the above-described conditions through the exercise of reasonable care.

39. At all material times, Defendants negligently failed to determine the hazards on the vessel to Plaintiff, failed to eliminate the hazards, failed to modify the hazards and failed to properly warn Plaintiff of the hazards.

40. The above conditions were neither open nor obvious to Plaintiff, and accordingly, Defendants owed Plaintiff, the duty to warn and/or correct them.

41. As a direct and proximate result of Defendant's negligence, Plaintiff was severely and permanently injured on or about June 2, 2022.

42. As a further and direct proximate result of Defendants' negligence, Plaintiff sustained serious and permanent injuries, pain and suffering, disability, mental anguish, inconvenience, and has incurred medical expenses in the past and will incur medical expenses in the future. All of said damages are permanent and continuing in nature.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants, and for each of them, as follows:

1. For general and special damages according to proof;
2. For economic damages;
4. For prejudgment interest as allowed by law;
5. For costs of suit incurred herein;
6. For such other and further relief as the Court may deem proper.

NELSON & FRAENKEL, LLP

By: *s/Carlos F. Llinás Negret*
Carlos F. Llinás Negret
*Attorneys for Plaintiff*

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury.

Date: May 26, 2023.

NELSON & FRAENKEL, LLP

By: *s/ Carlos F. Llinás Negret*
Carlos F. Llinás Negret
*Attorneys for Plaintiff*